The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Dallas William PANCOAST, Jr.,
Defendant-Appellee.

No. 82SA46.

Supreme Court of Colorado,
En Banc.

May 3, 1982.

G. F. Sandstrom, Jr. Dist. Atty., Patrick J. Delaney, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

J. E. Losavio, Jr., Pueblo, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the district court suppressing a statement made by the defendant, Dallas William Pancoast, Jr., to a police detective during the course of a station house interrogation and also suppressing stolen property subsequently recovered by the police as a result of the defendant's statement. The district court concluded that the statement and the stolen property were the fruit of the defendant's warrantless arrest at his home. We reverse the suppression order and remand with di-

rections to determine the motion to suppress in accordance with the appropriate constitutional standard of "arrest."

The defendant is charged with the burglary of a gas station sometime between September 15 and 16, 1981, in Pueblo, Colorado. Prior to trial the defendant moved to suppress any statements made by him to the police and any evidence recovered by the police subsequent to his statement on the ground that such evidence was obtained as the result of an unlawful arrest in violation of the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution. The evidence at the suppression hearing established that Pueblo Detective Willard Dawson had been assigned to investigate the burglary of the gas station with which the defendant was charged. On September 17, 1981, Detective Dawson contacted Mr. Alvin Mueller, the owner of the gas station, who showed the detective some tire tracks of unusual design near the rear of the station. Mr. Mueller told Dawson that these tracks were not there when he closed the station on the evening of September 15 and that they could have been made by a pickup belonging to the defendant who previously had worked at the station. Detective Dawson obtained a detailed description of the defendant's pickup truck from the gas station owner and later located the truck near the Pueblo Vocational Community College. He observed the tires on the vehicle and determined that they matched the tire tracks left near the rear of the station. After unsuccessfully waiting near the pickup truck for the defendant to appear, the detective left the area upon completion of his work shift for the day.

At approximately 9:00 a.m. on the next day, September 18, Detective Dawson went to 8 Tarton Lane in Pueblo, Colorado, where the defendant, who was eighteen years old, lived with his parents. According to Detective Dawson's suppression testimony, he advised the defendant's father that his son was a suspect in a gas station burglary, whereupon the father awoke the defendant who shortly appeared before the officer. Detective Dawson testified that he then asked the defendant if he would accompany him to the police station in order to answer questions about the burglary and the defendant agreed to do so. In contrast to Detective Dawson's testimony, the defendant's parents testified that the detective refused to inform them of the reason why he wanted to question their son. The defendant's father testified that when he requested permission to accompany his son to the police station, the officer refused and stated: "He's an adult. There's nothing you can do about it. You can't be present at the questioning."

The defendant left the home with Detective Dawson and outside the house they had a brief conversation about the tires on the defendant's truck. During the suppression hearing Detective Dawson was questioned about what he would have done if the defendant decided to run. The detective responded that he probably would have chased him but later during his testimony indicated that he was not sure what he would have done. Upon arrival at the police station the defendant was advised of his *Miranda* rights, confessed to the burglary, and disclosed the location of various tools stolen from the gas station. When the defendant's statement was completed, Dawson advised him that he was being placed under arrest for the burglary. Shortly thereafter the defendant escorted Detective Dawson to the location where the stolen tools had been placed and pointed them out to him.

The district court suppressed the defendant's statement as well as the tools stolen in the burglary, ruling as follows:

"An arrest occurs when a person's freedom of movement is restricted in any significant way. The Court finds that defendant was arrested at his home. There can be little question but what the officer would have chased the defendant had defendant decided to run. An officer cannot enter a person's home to effect a warrantless arrest in the absence of exigent circumstances.... It is clear that no exigent circumstances existed in this

case. It is equally clear that Officer Dawson had ample time to procure an arrest warrant. The Court finds that defendant's arrest was improper.

"The statement made by the defendant and the seizure of the tools are subject to suppression if either occurred as a result of the improper arrest of the defendant. The testimony shows that nothing occurred between the time the defendant was arrested and the time the tools were seized other than defendant was advised of his *Miranda* rights. This, in itself, is not sufficient to dissipate the taint of the improper arrest."

On this appeal the People concede that if the defendant was arrested at his home, the suppression ruling should be affirmed because there was neither probable cause to arrest the defendant at that time nor were there exigent circumstances justifying the defendant's warrantless arrest in his home. However, the People assert that the district court erred in its resolution of the timing of the defendant's arrest by employing a subjective standard based upon the perceptions of the arresting officer rather than an objective standard based upon the belief of a reasonable person in the position of the defendant. Under this latter standard, according to the People, the evidence establishes that the defendant consented to accompany Detective Dawson to the police station and that the arrest did not occur until the defendant had confessed to the burglary. We conclude that the court did not apply the appropriate constitutional standard in determining whether the defendant had been arrested at his home and we remand the case for a redetermination of this critical issue.

In this case the court based its determination of the arrest issue on the officer's subjective appraisal of what he would have done in the event that the defendant had fled from the officer's presence during the encounter in the defendant's home and later trip to the police station. The officer's subjective state of mind, however, is not the standard for determining whether and when a person has been arrest-

ed. Admittedly, when a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person in a constitutional sense. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968). It does not follow, however, that every personal confrontation between a police officer and a citizen, which results in some form of interrogation directed to the citizen, necessarily involves a "seizure" of the person. *Cf. Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (defendant's compliance with officer's request that he come to police station to discuss something, and ensuing station house interrogation, during which defendant confessed to burglary, not a "custodial interrogation" so as to require *Miranda* advisement prior to questioning). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [a court] conclude that 'a seizure' has occurred." *Terry v. Ohio, supra* at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16. In *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980), Justice Stewart, in an opinion announcing the judgment of the court, recently stated that the determination of the issue whether a person has been seized for purposes of the Fourth Amendment must be resolved by an objective standard—that is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." This objective standard is consistent with Colorado case law on the meaning of "custody" for purposes of the *Miranda* warning. *People v. Algien*, 180 Colo. 1, 501 P.2d 468 (1972); *People v. Marioneaux*, Colo.App., 618 P.2d 678 (1980).

In this case the district court must determine upon remand whether the defendant was arrested in his home or, instead, voluntarily consented to accompany the officer to the station house to answer questions about a burglary. The court's resolution of the arrest issue must be made under the "reasonable person" standard. In this respect

the court must assess the totality of circumstances surrounding the officer's encounter with the defendant. Pertinent factors include the following: the time, place and purpose of the encounter; the words used by the officer, his tone of voice and general demeanor in requesting the defendant to accompany him to the police station; the officer's statements to others who were present during the encounter; the manner in which the defendant was escorted out of the house and transported to the station house; the officer's response to any questions by the defendant or his parents regarding the defendant's right to refuse to go to the station house; and the defendant's verbal or non-verbal responses to any directions given to him by the officer. *See, e.g., United States v. Mendenhall, supra; Gomez v. Turner,* 672 F.2d 134 (D.C.Cir. 1982).

If the court finds that the defendant was arrested in his home then, as the People concede, that arrest was based upon neither probable cause nor exigent circumstances justifying the failure to obtain a warrant, *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *McCall v. People,* Colo., 623 P.2d 397 (Colo. 1981), and the defendant's confession and the subsequently discovered stolen tools should be suppressed under the derivative evidence rule, notwithstanding the intervening *Miranda* warning. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *McCall v. People, supra; People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980); *People v. Corbett,* 190 Colo. 388, 547 P.2d 1264 (1976). If, on the other hand, the court finds that the defendant voluntarily consented to accompany the officer to the police station for questioning, waived his *Miranda* rights, and was arrested only after he confessed to the burglary, then the motion to suppress should be denied. The court in its discretion may permit the parties to present additional evidence on the suppression issue.

The ruling is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.