**PEOPLE of the State of Colorado, Plaintiff-Appellee,**

**v.**

**David Lee MARES, Defendant-Appellant.**

**No. 83CA0073.**

Colorado Court of Appeals, Div. III.

April 18, 1985.

Rehearing Denied May 16, 1985.

Certiorari Denied Sept. 23, 1985.

1014

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Solicitor Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, for defendant-appellant.

ENOCH, Chief Judge.

Defendant, David L. Mares, appeals from a judgment entered on a jury verdict finding him guilty of second degree murder. We reverse and remand.

On Saturday, July 25, 1981, defendant entertained friends at a barbecue at his home, during which excessive drinking took place throughout that night and into Sunday morning. On Sunday afternoon, police and paramedics responded to the report of a stabbing at the residence. Upon arrival, defendant's male guests were found "passed out" or sleeping in various places on the property. In the kitchen, the victim was found lying on the floor with blood visible around his upper body, and defendant bending over him. Both were intoxicated. The victim was found to be suffering from numerous stab wounds.

Defendant allegedly made several statements while police and paramedics were in his home. The paramedics testified that they repeatedly had to push defendant away from the victim, and that defendant spoke to the victim, while crouched over him. One paramedic testified that he heard defendant repeatedly implore the victim to "be cool about this," while the other paramedic testified that he overheard defendant say, "I didn't mean to do it." Defendant also allegedly made several inconsistent, sarcastic, and confusing remarks to police officers about the circumstances surrounding the stabbing. Although surgery was performed to repair the damage caused by the wounds, the victim died the next day.

### I.

Defendant contends that the court erred when it instructed the jury on second degree murder and heat of passion manslaughter, but refused to give additional requested instructions for the lesser offenses of reckless manslaughter and criminally negligent homicide. We agree.

■ When there is any evidence, however improbable, unreasonable, or slight, which tends to reduce a homicide charge to a lesser included offense, the defendant is entitled to an instruction thereon. *People v. Watkins*, 196 Colo. 377, 586 P.2d 43 (1978). In such circumstances, refusal to instruct on a lesser offense is reversible error. *People v. Shaw*, 646 P.2d 375 (Colo. 1982).

Here, the evidence established that the victim had been stabbed three times in the torso and had sustained numerous wounds on his forearms, apparently as he attempted to defend himself, but that none of these wounds was immediately life-threatening. Both a coroner and a surgical resident testified that the victim died from shock incidental to an infection which occurred most likely from a small wound in the duodenum which had not been located during surgery. They further testified that a contributing factor to victim's death was severe cirrhosis of his liver.

■ Therefore, the jury could have determined that defendant had stabbed the victim during an altercation in which he had consciously disregarded the substantial and unjustifiable risk that death might occur. *See Shaw, supra;* § 18–3–104(1)(a), C.R.S. (1978 Repl. Vol. 8) (reckless manslaughter). Similarly, the jury might have concluded from this evidence that defendant had committed a gross failure to perceive that his actions caused a substantial and unjustified risk that death could occur. *See Shaw, supra;* § 18–3–105(1)(a), C.R.S. (1984 Cum.Supp.) (criminally negligent homicide). It was, thus, reversible error to refuse the requested instructions on reckless manslaughter and criminally negligent homicide.

Because several of defendant's remaining contentions of error are likely to arise on retrial, we will address them here.

### II.

Defendant contends that it was error to admit into evidence the hearsay statement of an unknown declarant. We agree.

The court allowed the prosecution to ask one of the paramedics whether the victim had said anything while being taken to the

ambulance, holding that any statements made by the victim under those circumstances would constitute an "excited utterance" and would therefore be permissible testimony under the exception to the hearsay rule set out in CRE 803(2). The paramedic then testified that, "I heard someone say, 'he's my friend,' or, 'that's his friend, but he did it.'" It was, therefore, unclear whether this statement was made by the victim or by one of the people surrounding the victim as he was being moved from the house. Defendant was still in the house and was not present when these statements were made.

It is uncontested that this statement was hearsay. Under CRE 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. Such statements have traditionally been found reliable because the circumstances which produce them temporarily suspend the reflective capacity, and thus, the utterance becomes the unreflective and sincere expression of one's actual impression and belief. *People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982); 6 J. Wigmore, *Evidence* § 1749 (Chadmore Rev.Ed.1976).

 Even bystanders to an event may in certain circumstances be sufficiently affected by its excitement to have their utterances rendered reliable. Wigmore, *supra* § 1755. *See Williams v. Melton*, 733 F.2d 1492 (11th cir. 1984). However, the hearsay statement of an unknown bystander is only admissible under CRE 803(2) when the circumstances which surround it would affect the declarant in a way that assures its spontaneity and, therefore, its reliability for trustworthiness. *Williams, supra; Wigmore, supra* § 1749 & 1750. *Cf. People v. Ortega*, 672 P.2d 215 (Colo.App. 1983).

 There is no evidence in the record that these circumstances were present. An indeterminable amount of time had elapsed from the incident's occurrence to the time that paramedics arrived and were able to remove the victim. There was no evidence that anyone in the house was distraught or shocked by the events that had occurred. There was, therefore, no evidence of the spontaneity or emotion required to rule out the possibility of conscious reflection, and the protection provided by the excited utterance exception was not demonstrated as being present in the people surrounding the victim. Thus, the hearsay statement of the unknown declarant should not have been admitted, and should not be admitted on retrial unless there is sufficient foundation to meet the tests for relevance and reliability.

### III.

Defendant contends that it was error for the court not to have suppressed statements made prior to the issuance of *Miranda* warnings, while defendant was intoxicated. He argues that the totality of the circumstances, including particularly the testimony of one police officer that the officer did not feel defendant would have been free to leave the house if he had tried is determinative that defendant was in custody, and that his statements were not voluntary.

The court held that because defendant was free to move around his house and was not a suspect at the time, he had not been arrested when the statements were allegedly made and, therefore, *Miranda* warnings were not needed. However, the court did not make any findings as to whether defendant was in custody at the time, nor did it make any findings as to whether the statements were voluntary. *People v. Pancoast*, 659 P.2d 1348 (Colo.1982).

 The procedural safeguards of *Miranda* are required only when a defendant is in custody at the time of questioning. *People v. Johnson*, 671 P.2d 958 (Colo. 1983). Custody is determined for *Miranda* purposes by an objective test, through an examination of the totality of circumstances. A court should determine whether in this situation a reasonable person would

believe he was deprived of his freedom in any significant way, examining the purpose, place, and length of an interrogation. *Johnson, supra.*

■■■ Explicit testimony by a police officer that a suspect was not free to leave at any time during an interrogation demonstrates that an accused was in custody. *Johnson, supra.* However, an .officer's subjective belief regarding what he would have done had a suspect attempted to leave the premises during questioning is not the standard for determining whether one is in custody. *People v. Pancoast, supra.*

■■■ Because the testimony from different officers was conflicting as to whether defendant was free to leave, it was for the trial court to determine whether, under the totality of the circumstances, defendant was in custody at the time the statements were made, and, if not, whether any of the statements were voluntary. *See Pancoast, supra, see also Johnson, supra.* If these statements are offered again in the new trial, the court must consider and make findings concerning the custody status of defendant and whether the statements were voluntary.

IV.

■■■ We further hold that any reference to defendant's refusal to make a written statement before arrest should not be allowed; defendant's "silence" in such circumstances is irrelevant. *See People v. Quintana,* 665 P.2d 605 (Colo.1983).

■■■ Contrary to defendant's allegations, even without those portions we have found to be inadmissible, the evidence was sufficient to support the jury's verdict.

The judgment is reversed and the cause is remanded to the trial court for a new trial in accordance with the views herein expressed.

BABCOCK and METZGER, JJ., concur.