PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Lewis Sherman HARPER,
Defendant-Appellee.

No. 85SA436.

Supreme Court of Colorado,
En Banc.

Oct. 20, 1986.

Kurt P. Schulke, Dist. Atty., Peter F. Michaelson, Deputy Dist. Atty., Breckenridge, for plaintiff-appellant.

Letofsky, Stromer & Tyler, David G. Tyler, Dillon, for defendant-appellee.

ROVIRA, Justice.

In this interlocutory appeal, filed pursuant to C.A.R. 4.1, the People challenge the district court's order granting the defendant's motion to suppress the results of a blood test and a statement made by the defendant. The People contend that the trial court erred in concluding that: the defendant was under arrest at the time he made a statement; there was a failure to follow the provisions of sections 13–90–201(1)(d) and 202, 6 C.R.S. (1973); and there was no probable cause to require the defendant to undergo a blood test. We reverse and remand with directions.

I.

An information was filed in the Summit County District Court charging the defendant, Lewis Harper, with vehicular homicide[1] and driving under the influence.[2] The defendant filed motions to suppress which were granted by the court.

The record of the suppression hearing reveals the following pertinent facts. On December 5, 1984, at approximately 8:30 p.m., Officer Robert Parish, of the Colorado State Highway Patrol, arrived at the scene of an automobile accident. He saw a Honda automobile on the shoulder of the

1. § 18–3–106, 8B C.R.S. (1986).

2. § 42–4–1202, 17 C.R.S. (1984).

road, on the west side, and an Oldsmobile off the west side of the road down an embankment. Parish determined the point of impact and observed skid marks made by the Oldsmobile. The marks indicated to him that the Oldsmobile, traveling north, had traveled onto the shoulder of the road, overcorrected, skidded broadside across the northbound lane of traffic, across the center line into the southbound lane and then hit the Honda. Parish concluded that the defendant, the driver of the Oldsmobile, had lost control of his vehicle and was "at fault."

Parish also found several factors which indicated that Harper might possibly have been drinking; namely, evidence of weaving, overcorrection, and excessive speed. Shortly thereafter, Sergeant Babcock, Parish's supervisor, also investigated the accident and concluded that there was a possibility that the defendant had been drinking because the evidence was consistent with that type of accident.

During the course of Parish's investigation, a fire reserve unit was bringing the defendant, the only occupant of the automobile, up the embankment on a stretcher. Parish was advised by one of the rescue personnel that the defendant was deaf and unable to speak.

The defendant was taken to the Summit Medical Center. A short time later, Parish went to the medical center where he observed a Mr. Serna speaking with the defendant by sign. After Parish requested Serna's assistance in communicating with the defendant, Serna told Parish that he was a friend of Harper's and agreed to talk to the defendant for Parish.

After Parish was advised by a doctor that one of the occupants of the Honda might not survive, he turned his attention to the defendant. He gave a *Miranda* advisement form to Serna and asked him to have the defendant read it and ask him if he understood the advisement. Serna provided the defendant with the advisement form, the defendant read it and acknowledged to Serna, through sign, that he understood it. Serna communicated this information to Parish.

Parish then had Serna ask the defendant if he would submit to a blood test to determine the amount of alcohol in his system. Serna conveyed this request through sign to the defendant, who responded through Serna that he did not want to take a test and that he had had only one beer to drink. Parish testified that, based on his experience, the "one beer" response was consistent with statements given by a suspected drinking driver in that "they generally do not know how much they've had to drink," and the classic response was that of the "two-beer intoxicated driver."

After discussing the situation with Babcock, Parish advised the defendant through Serna that the seriousness of the accident and the injuries and the circumstances or evidence at the scene of the accident required that he submit to a blood test. The defendant executed a permission to draw blood and release form, taken from a standard blood-testing kit, and submitted to a blood test.

The trial court determined that, since Parish had testified on cross-examination that the defendant was not "medically or legally" free to leave and would have been detained if he had tried to leave, the defendant was in custody and under arrest at the time that he was advised of his *Miranda* rights and initially requested to take a blood-alcohol test. Therefore, since the defendant was under arrest at the time he made the statement that he had only one beer, the statement must be suppressed because no qualified interpreter had been appointed pursuant to section 13–90–201, 6 C.R.S. (1973).

The court also determined that, absent the statement of the defendant concerning his having "one beer," probable cause did not exist for his arrest at the time the blood test was demanded. On the basis of these findings, the trial court suppressed the defendant's statement and the results of the blood test.

## II.

We first consider the propriety of the district court's determination that the defendant was "in custody and under arrest" because the officer testified that the defendant was not free to leave the hospital and would have been restrained had he tried even though this information had not been communicated to him.

■ Whether a person is in custody turns on an objective assessment of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence. *People v. Thiret,* 685 P.2d 193 (Colo.1984). *See People v. Wallace,* 724 P.2d 670 (Colo. 1986); *People v. Algien,* 180 Colo. 1, 501 P.2d 468 (1972) (whether under the circumstances a reasonable man would believe himself to be deprived of his freedom in any significant way).

■ The relevant criteria to be considered in determining whether a person is in custody include, *inter alia,* the time, place, and purpose of the encounter; the words used by the officer; the officer's demeanor; and the person's verbal or nonverbal response to any directions given to him by the officer. *People v. Viduya,* 703 P.2d 1281 (Colo.1985); *People v. Pancoast,* 659 P.2d 1348 (Colo.1982).

■ Contrary to the trial court's conclusion, the officer's subjective state of mind is not an appropriate standard for determining whether and when a person is in custody or under arrest. *People v. Johnson,* 671 P.2d 958 (Colo.1983). In *Pancoast,* we observed that every confrontation between a police officer and a citizen which results in some form of interrogation does not necessarily involve a "seizure" of the person. It is only when the officer, by means of physical force or show of authority, has in some way restrained the defendant's liberty that the court may conclude a

seizure has occurred. *See also Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984) ("A policeman's unarticulated plan has no bearing on the question of whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

■ As we said in *People v. Black,* 698 P.2d 766, 768 (Colo.1984): "[T]estimony by a police officer that he would not have allowed the defendant to leave the scene of the accident has no bearing on the custody issue where the officer does not communicate his intentions to the suspect." Accordingly, we reject the court's conclusion that the defendant was in custody and under arrest. We reverse and remand with directions for the trial court to apply the appropriate standard in determining this critical issue.

## III.

The trial court reasoned that, since the defendant was under arrest and the defendant was a deaf-mute, section 13–90–201(1)(d), 6 C.R.S. (1973), mandated the appointment of a qualified interpreter before any attempt to interrogate or take a statement from the defendant was made.[3] Thus, the trial court suppressed the defendant's "one beer" statement for failure to follow the statutory requirement. The trial court's ruling was premised on its conclusion that the defendant was under arrest at the time he made this statement.

In light of our order of remand in Part II, and because sections 13–90–201 through 205, 6 C.R.S. (1973), have not been subject to prior judicial review, the trial court should consider the following questions in determining the applicability of these statutory provisions.

3. § 13–90–201(1)(d):
(1) A qualified interpreter shall be appointed in the following cases:
. . . .
(d) When a person who is deaf or mute, or both, is arrested for an alleged violation of a criminal law of the state or any of its political subdivisions. Such appointment shall be made prior to any attempt to interrogate or take a statement from such person.

First, if the court determines that the defendant was under arrest, whether the officer's request that he submit to a blood test was interrogation within the meaning of section 13–90–201(1)(d). *See South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (roadside request by a police officer for a driver to submit to a blood test is not interrogation); *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (interrogation includes only those words or actions that an officer knew or should have known were reasonably likely to elicit an incriminating response).

Second, if the court determines that the defendant was under arrest at the time he was asked to submit to a blood test and that the officer's request was interrogation, whether suppression is the appropriate remedy. The trial court should consider the intent and purpose of the statute and particularly section 13–90–202, 6 C.R.S. (1973), which requires that an interpreter be "able to accurately repeat and translate the statements of said person."[4]

### IV.

We now turn to the trial court's order suppressing the results of the blood test. The court found that

> [T]he evidence up to the point where there was the admission of one beer, even by [the police's] own statements, clearly indicates only the speculation of a drinking driver. Therefore ... there was no probable cause at that point in time to place him under arrest; and there was no clear indication that alcohol was involved.

In *People v. Sutherland,* 683 P.2d 1192 (Colo.1984), we held that a formal arrest is not necessary before a blood sample is taken from a person without his consent. However, we held that four requirements must be met:

> First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

*Sutherland* at 1194.

In view of our prior discussion, the trial court should consider, if the "one beer" statement is not suppressed, whether probable cause existed when the "one beer" statement is taken into account. It should also consider whether that statement along with the actions and appearance of the defendant gave the police a clear indication that the blood sample would reveal evidence of the defendant's level of intoxication.[5]

The order of the district court is vacated and the case remanded for further proceedings consistent with this opinion.

---

4. Section 13–90–201, *et seq.,* 6 C.R.S. (1973), does not set out the sanction to be applied in the event the statute is violated. Assuming that accuracy is the central purpose of the statute and the court determines that Serna met the qualifications of a "qualified interpreter," pursuant to section 13–90–202, the failure to appoint an interpreter should not result in suppression. If, on the other hand, the court determines that Serna was not able to accurately communicate with the defendant, the statement must be suppressed because the defendant could be incriminated by a statement which, although attributed to him, might not be accurate.

5. An examination of the record reflects that Parish stated that the defendant signed a form consenting to the blood test. The form was not admitted into evidence. Therefore, we do not address the issue of consent.