**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Robert D. GORDON, Defendant-Appellant.**

**No. 85CA0882.**

Colorado Court of Appeals, Div. II.

Feb. 12, 1987.

Rehearing Denied March 5, 1987.

Certiorari Denied (Gordon) June 8, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, Janet Y. Fullmer, Deputy Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Robert D. Gordon, appeals the judgment of conviction entered on a jury verdict finding him guilty of criminally negligent child abuse. We affirm.

On June 21, 1984, defendant brought his nine-month old daughter to a hospital after he noticed her vomiting and breathing irregularly. He told the emergency room nurse that he had been feeding the child when she had stopped breathing. He later told the attending physician that she had choked on her formula while he was mowing the lawn. The emergency room team managed to revive her, and she was transferred to Children's Hospital. After doctors there determined she was brain dead, they removed her respirator and she died. The emergency room physician noticed that the child had diffused retinal hemorrhaging, which indicated that she had been shaken violently, and he notified the Department of Social Services.

The next day, June 22, the police were advised that child abuse was a possible cause of the child's death and they began an investigation. That day, detectives went to defendant's residence and, after no one responded to their knock, entered through an unlocked door and found defendant in bed. After some initial questioning, the detectives asked defendant and his wife to follow them in their car to the police station for a more detailed interview.

Defendant complied and was questioned by detectives.

Defendant was not given a *Miranda* warning at his home or at the station on June 22. However, after the officers received the coroner's report that the child had suffered subdural and subarachnoid hemorrhaging consistent with violent whiplash injury, the next day he was advised of his *Miranda* rights prior to an interview at the station. Statements made by the defendant on June 22 concerning the circumstances of the child's death were later used against him at trial.

Several physicians testified that the symptoms displayed by the child both at the time of her death and during a previous hospitalization were consistent with nonaccidental trauma, and with her having been shaken violently. The pathologist who performed the autopsy testified that the cause of death was whiplash injury.

Dr. Richard Krugman, director of the University of Colorado Medical School's National Center for the Prevention and Treatment of Child Abuse and Neglect, testified as an expert about diagnostic features used to identify a nonaccidental injury. Dr. Krugman stated that, in his opinion, the child's death was not an accident, since three of eight factors used to identify such injuries were present in this case, the most important of which was the discrepancy between accounts defendant gave, and the actual injuries sustained. On this evidence, defendant was convicted.

I.

Defendant first contends that the trial court erred in admitting statements he made to the police on June 22, 1984, since they were obtained as a direct response to custodial interrogation without the benefit of *Miranda* warnings. We disagree.

■ Advisement of the privilege against self-incrimination and the right to counsel is a prerequisite to the prosecution's use of any statement made by a person as a result of custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Algien*, 180

Colo. 1, 501 P.2d 468 (1972). Nevertheless, police officers are not required to give *Miranda* warnings to every person they question. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *People v. Pancoast,* 659 P.2d 1348 (Colo.1982). Both custody and interrogation must be present before the *Miranda* rules apply. *People v. Algien, supra.*

The test for determining whether a person has been taken into custody is an objective one, *i.e.,* whether under the circumstances a reasonable person in the suspect's position would believe himself to be deprived of his freedom in any significant way. *People v. Viduya,* 703 P.2d 1281 (Colo.1985); *People v. Johnson,* 671 P.2d 958 (Colo.1983); *People v. Algien, supra.*

However, the fact that the questioning took place at the police station does not by itself establish custody. *See Oregon v. Mathiason, supra; People v. Johnson, supra.* Nor does the fact that it may have taken place in a "coercive environment," since any interview by a police officer may have coercive aspects to it. *See People v. Brewer,* 720 P.2d 583 (Colo.App.1985); *see also Oregon v. Mathiason, supra.*

Here, our review of the record leads us to agree with the trial court's finding that defendant was not in custody on June 22. Defendant voluntarily accompanied police to the station; he arrived in his own car and not in a police car. He was not informed he was a suspect in his daughter's death, nor was he placed under arrest. He left after a short time and was not detained against his will. Therefore, we conclude that a reasonable person in defendant's position would not have believed himself to be deprived of his freedom in any significant way, and thus, *Miranda* warnings were not required. *See Oregon v. Mathiason, supra; People v. Thiret,* 685 P.2d 193 (Colo.1984); *People v. Madson,* 689 P.2d 639 (Colo.App.1984). Hence, the trial court did not err in refusing to suppress statements obtained from defendant in his initial interview. *See People v. Thiret, supra; People v. Madson, supra.*

## II.

Defendant next contends that the trial court erred in failing to suppress the testimony of Dr. Krugman. He argues that it was not the kind of expert testimony that would assist the trier of fact and that its prejudicial nature outweighed any probative value it otherwise had. Again, we disagree.

Dr. Krugman, a pediatrician, was qualified as an expert in the field of child abuse without objection. He testified that eight diagnostic factors can be used to determine whether a child's injury is nonaccidental: a discrepant history of injury; delay in seeking medical attention; stress-producing family crises; a triggering event by the child; a history of abuse by the adult abuser; physical or social isolation of the abuser; unrealistic expectations of the child by the abuser; and a pattern of increasing severity of injury. Dr. Krugman testified that a discrepant history is found in nearly all cases of child abuse, that is, the abuser will give an explanation of the child's injuries that does not comport with the medical diagnosis. *See generally Kempe, et al., The Battered Child Syndrome,* 181 *J.A. M.A.* 17 (1962).

As a result of a pretrial motion, evidence of defendant's prior violent behavior toward the child as a basis for Dr. Krugman's opinion was excluded as prejudicial under CRE 403. At trial, Dr. Krugman expressed an opinion based only upon the discrepancy between defendant's report of what happened to the child and what the autopsy revealed, and upon defendant's delay in seeking help. He also briefly alluded to certain stress that defendant was under.

Based on these factors, Dr. Krugman opined that the infant's death was not accidental, but was to a reasonable degree of medical certainty the result of violent shaking or nonaccidental whiplash.

This opinion was based upon facts or data reasonably relied upon by experts in the field, *see* CRE 703, and was of assistance to the trier of fact in determining a fact in issue, *see* CRE 702, namely that the child's death was not an accident. The opinion was based on inferences drawn

from the admissible evidence, not upon speculation, was within Dr. Krugman's field of expertise, and was probative of the nonaccidental nature of the death. Accordingly, we find no abuse of discretion by the trial court in admitting Dr. Krugman's opinion testimony. *See People v. Ellis*, 41 Colo.App. 271, 589 P.2d 494 (1978).

### III.

Finally, defendant contends that the evidence was insufficient to support a conviction and that the trial court thus erred in denying his motion for acquittal. This contention is without merit.

Evidence of guilt is sufficient if the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Gonzales*, 666 P.2d 123 (Colo.1983). And, when the sufficiency of the evidence is challenged, the prosecution must be given the benefit of every reasonable inference to be drawn from the evidence. *People v. Gonzales, supra.*

The record shows that it was established by expert testimony that the child's death was not the result of an accident or natural causes, but of whiplash injuries consistent with violent shaking. It also shows that the child was alive and healthy prior to being left in defendant's sole care on the evening of her death, and that defendant gave conflicting versions of the incident to his neighbors, the doctors, and the police. Moreover, it was established that defendant was the only adult who had access to the child during the time she became ill.

This evidence, viewed in the light most favorable to the prosecution, is sufficient to support the inference beyond a reasonable doubt that defendant performed an act or caused or permitted the child to be placed in a situation that endangered her life. *See* § 18–6–401(7)(a)(II), C.R.S. (1986 Repl.Vol. 8B). It is irrelevant that the evidence of defendant's guilt was more circumstantial than direct. *See People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

The trial court therefore did not err in denying defendant's motion for acquittal.

Judgment affirmed.

SMITH and TURSI, JJ., concur.