## No. 80SA5

### The People of the State of Colorado v. Fannie J. Fordyce

(612 P.2d 1131)

Decided June 23, 1980.

Paul Q. Beacom, District Attorney, Marc P. Mishkin, Deputy, Darrel L. Campbell, Deputy, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Terri L. Brake, Deputy, for defendant-appellee.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

The People bring this interlocutory appeal under C.A.R. 4.1 seeking review of the trial court's suppression of a statement taken from the defendant, Fannie Joyce Fordyce, as involuntary. We affirm the trial court's ruling.

On the evening of September 7, 1979, the defendant allegedly ignited a fire in her mobile home in Thornton, Colorado, which killed one of the mobile home's occupants and injured the defendant. The defendant was charged with first-degree murder under sections 18-3-102(1)(a) and (b), C.R.S. 1973 (now in 1978 Repl. Vol. 8), and fourth-degree arson under section 18-4-105, C.R.S. 1973 (1978 Repl. Vol. 8).

The defendant gave the statement, which the trial court suppressed, to a Thornton Police Department detective and a Thornton Fire Department investigator who questioned her in the Intensive Care Unit at St. Anthony's Central Hospital.[1] Before entering the defendant's room, a nurse required both men to dress in complete surgical garb, including caps, gowns and gloves. The detective advised the defendant of her *Miranda* rights and taped her subsequent inculpatory statement.

The defendant was in intensive care for treatment of second-degree burns on her arms and hands and first-degree burns on her face and shoulders. At the time she was interviewed, her treatment included intravenous administration of morphine sulphate and penicillin, medication on her face, dressings on her arms, rubber gloves on her hands, a heart monitor, and a catheter in her bladder. The defendant's medical records show she had been receiving five milligrams of morphine at regular intervals beginning September 8. Her treating doctor, a plastic surgeon, testified that the dosage was effective to take the edge off her pain.

At the suppression hearing, one of the attending nurses and the defendant's treating doctor testified that the defendant appeared to be oriented as to person, time and place.[2] The witnesses characterized the defendant as a reasonable patient who understood and followed directions although her injuries were painful. The detective testified that the defendant appeared to understand his questions and her responses were appropriate.

An expert toxicologist, testifying for the defense, characterized the defendant's morphine dosage as sufficient to achieve a steady state of tissue saturation or morphine intoxication. The expert testified that the effect of morphine is predictable and that the defendant's medical records, the only basis for the expert's testimony about the defendant, showed an average reaction to an average dose of morphine. He explained that morphine operates on a person's central nervous system, and an effective dose, which the defendant's treating physician said she received, creates a euphoria which takes away a patient's perception of pain. The expert also testified that although a patient may exhibit no outward signs of intoxication, an effective dose of morphine takes away a patient's perception of danger, thereby lessening self-protective instincts.

A second effect of morphine, according to the toxicologist, is interference with short term memory. He indicated that 25 people had made notes in the defendant's intensive care medical chart and that it would be easy

---

[1] The detective testified that the defendant's doctor would not allow him to interview the defendant in the Intensive Care Unit on September 9. On September 10, the doctor was not available, and the head nurse for the Intensive Care Unit permitted the detective and the investigator to interview the defendant.

[2] There is no indication in the record that the defendant's treating doctor saw her on September 10. No one did a mental status examination of the defendant while she was in intensive care.

for the average person receiving morphine to confuse the medical personnel with the investigators dressed in hospital garb. The toxicologist's opinion based on reasonable medical probability was that an average person under treatment with morphine would have difficulty understanding a *Miranda* advisement and perceiving the important effect of information given to the police. Based on the hearing testimony, the trial judge suppressed as involuntary the defendant's statement on September 10.

For the defendant's statement to be admissible, it must be voluntary. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The People must establish the voluntariness of a confession by a preponderance of the evidence. *People v. Martinez,* 185 Colo. 187, 523 P.2d 120 (1974). *People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973).

The People challenge the admission of the toxicologist's testimony and the weight given by the trial court to the expert testimony. They concede that expert psychiatric testimony regarding a defendant's mental ability to make free and intelligent decisions at the time of an inculpatory statement is admissible. *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978). Here, however, they contend that the toxicologist testified only about typical reactions of an average patient experiencing morphine intoxication. Such testimony, they maintain, did not describe the defendant, and thus, should not have been admitted. The People claim that the toxicologist's testimony was not based upon the defendant's medical records. To the contrary, our review of the record indicates that the toxicologist's testimony was based on the defendant's medical record. The People offered no testimony that contradicted the expert's description of the average effect of morphine, and indeed, the defendant's treating doctor described the morphine dosage to his patient as an "effective dose." The fact alone that an expert witness has not examined the subject of his opinion does not disqualify him from expressing an opinion. *People v. Manier,* 184 Colo. 44, 518 P.2d 11 (1974). Once the opinion is given, the trial court determines the expert's credibility and the weight to be accorded his opinion. *People v. Parks, supra.*

The People also challenge the trial court's ruling as an abuse of discretion. The trial court described the issues as whether the defendant understood the *Miranda* warning and whether, in giving an inculpatory statement, she voluntarily waived her Fifth Amendment rights. The trial court found from the toxicologist's testimony that the effect of morphine saturation is to limit mental capacity to perceive danger. The court observed that the *Miranda* protections allow an individual to understand the consequences of making a statement before volunteering the statement. The court held that under the totality of the circumstances, the People did not meet their burden to prove the voluntariness of the defendant's statement by a preponderance of the evidence. *See Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971); *Duncan v. People,* 178 Colo. 314, 497 P.2d 1029 (1972).

On review, we are bound by the trial court's findings of fact where they are supported by adequate evidence in the record. *People v. Pineda,* 182 Colo. 385, 513 P.2d 452 (1973); *People v. Medina,* 180 Colo. 56, 501 P.2d 1332 (1972); *People v. Parks, supra.* We recognize that an appellate court is in no position to weigh conflicting testimony presented to the trial court. Here, the testimony of the treating doctor, nurse and detective that the defendant's behavior appeared rational does not conflict with the toxicologist's testimony describing morphine intoxication. Thus, the trial court's finding that the defendant's mental state was impaired sufficiently that her statements were involuntary is supported by the record and forecloses reversal by this Court.

Ruling affirmed.