The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Fran Margaret Allen CORLEY,
Defendant-Appellee.

No. 84SA239.

Supreme Court of Colorado,
En Banc.

April 29, 1985.

Nolan L. Brown, Dist. Atty., John R. Flanders, Deputy Dist. Atty., Golden, for plaintiff-appellant.

Steven R. Newell, P.C., Steven R. Newell, Steven P. Martens, Denver, for defendant-appellee.

NEIGHBORS, Justice.

The People, pursuant to C.A.R. 4.1, appeal the trial court's order suppressing incriminating statements made by the de-

fendant to a police officer on two different dates. We affirm in part, reverse in part, and remand for further proceedings.

## I.

The defendant is charged in an information filed in the Jefferson County District Court with one count of second-degree forgery [1] and one count of offering a false instrument for recording. [2] The People allege that the defendant first forged the signatures of her parents and the notation "paid in full" on a promissory note executed by her, and thereafter filed the forged instrument with the Jefferson County Clerk and Recorder.

We briefly summarize the factual background which led to the filing of the charges against the defendant. On July 20, 1982, Vivienne and Albert Bernhardt reported the burglary of their residence located in Arapahoe County to Officer Larry Sanders of the Arapahoe County Sheriff's Department. The Bernhardts told Sanders that they had left for a camping trip on July 9. They returned on July 11, and found the front door of their home unlocked. On July 12, Mrs. Bernhardt ascertained that certain legal documents were missing from her desk in the house. Then, the Bernhardts discovered on July 16, that a screen covering a basement window had been cut out and the window well cover removed. The residence had not been ransacked and the only items which appeared to be missing were legal documents concerning a second deed of trust securing a promissory note signed by the defendant and payable to the Bernhardts, her parents. Mrs. Bernhardt told Sanders that the promissory note in the amount of $25,099, the deed of trust on the defendant's residence which secured payment of the note, a title insurance commitment, and other papers documenting the money owed by the defendant had been stolen. The Bernhardts also told Sanders that they had started foreclosure proceedings against the defendant and her residence when she

failed to pay the note on its due date, July 1, 1982. Finally, the Bernhardts informed Sanders they suspected that the defendant and/or her daughter had been involved in the burglary.

The case was assigned to Detective M. Keith Schooler, an investigator with the Arapahoe County Sheriff's Department. On July 26, 1982, Schooler telephoned the defendant at her residence. He informed the defendant that her mother's house had been burglarized and described the items which had been taken. Schooler also told the defendant that she and her daughter were suspects and asked the defendant where her daughter could be located. The defendant denied any knowledge of the burglary and told Schooler that her daughter was out of town. Schooler requested the defendant to notify him if she learned anything about the stolen documents. She agreed to do so. Between that date and November 19, 1982, Schooler's efforts to meet with the defendant proved unsuccessful. Even though the defendant returned some of Schooler's telephone calls, she failed to appear for meetings with him which had been arranged at the Arapahoe County Sheriff's Office.

On or about November 19, 1982, Schooler received a telephone call from Mrs. Bernhardt who reported to him that the defendant had the stolen promissory note in her possession. On November 19, Schooler again called the defendant at her home. The defendant admitted that she had the note and informed Schooler that the note, signed by the Bernhardts, had come in the mail. She told Schooler she could not remember when she received the note. The defendant stated that she was advised by the Jefferson County Public Trustee to take the note to Andrew Bradley of the Arapahoe County Sheriff's Department to determine if the Bernhardts' signatures were authentic. The defendant said that she took the note to Bradley who told her that the signatures were authentic. The defendant then had the promissory note

---

1. § 18–5–103(1)(a), 8 C.R.S. (1978).

2. § 18–5–114(1), 8 C.R.S. (1984 Supp.).

recorded by the Clerk and Recorder of Jefferson County.

Based on these facts and other information, not material here, obtained during his investigation, Schooler filed a motion for nontestimonial identification pursuant to Crim.P. 41.1 in order to obtain handwriting exemplars. The motion was granted by an Arapahoe County judge on April 28, 1983. On May 5, 1983, Schooler served the motion and order upon the defendant. The defendant accompanied Schooler in her own car to the Arapahoe County Sheriff's Department. At first, she refused to provide the handwriting samples. Schooler told the defendant that she would be immediately jailed if she continued to refuse to supply the samples. The defendant stated that she was unable to write in cursive style and could only print. The defendant then complied with Schooler's request and produced handwriting exemplars.

Thereafter, the information was filed in August 1983. After the defendant entered a plea of not guilty at her arraignment in the district court, she filed a motion to suppress statements on the grounds that she had not been advised of her *Miranda* rights and that her statements were involuntary. At the conclusion of the hearing on the defendant's suppression motion, the trial court suppressed the statements made by the defendant to Schooler on November 19, 1982, and on May 5, 1983. The court denied the motion to suppress the statements made to Schooler on July 26, 1982, and those made to Bradley concerning the promissory note. Accordingly, the latter two issues are not before us on this interlocutory appeal brought by the People.

## II.

### The November 19, 1982, Statements

The trial court ruled that the November 19 statements made during the telephone conversation between the defendant and Schooler would be suppressed on the basis that the criminal investigation had focused on the defendant and, therefore, she should have been advised of her *Miranda* rights by Schooler. The court stated:

The Court would note that with regard to the questions that were asked at this time, that they went beyond a general initial investigation of the case, that it was clear that the Officer was *focusing in* on Fran Corley as a suspect, and while she was not in custody at the Arapahoe County Sheriff's Department, certainly she was *focused* on as a suspect. And in that regard, the Court is going to rule that she should have been advised that the statements could be used against her in these proceedings. The statements that she made clearly were statements which were incriminating to her with regard to the crimes that the department was *focusing* in on. Clearly she was entitled to know, at that time, and under the circumstances of this case, where she had had some continuing contact with this Investigator, that she was a suspect and that her statements could be used against her in court.

(Emphasis added.)

 It is apparent that the trial court applied an erroneous legal standard to the evidence concerning these statements introduced at the suppression hearing. In *People v. Parada*, 188 Colo. 230, 233, 533 P.2d 1121, 1122 (1975), we noted: "[T]he thrust of *Miranda* substituted the 'custodial interrogation' requirement for the 'focus of the investigation' test which had earlier been enunciated in *Escobedo v. Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]...." (Citations omitted.) In *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the Court stated: "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." Thus, the procedural safeguards required by *Miranda* are triggered only when a suspect is interrogated in a custodial setting. *People v. Johnson*, 671 P.2d 958 (Colo.1983).

 The parties agree that no *Miranda* warnings were given by Schooler and that

the defendant was not in custody. While the interrogation requirement of *Miranda* has been met, the custody element has not. Notwithstanding that the investigation may have focused on the defendant, the questioning of her by a policeman over the telephone under these circumstances was not custodial for purposes of *Miranda*. *See United States v. Carollo*, 507 F.2d 50 (5th Cir.1975). Accordingly, the trial court's order based on an alleged *Miranda* violation must be reversed.

One issue, however, remains with regard to the November 19 statements. In her motion to suppress, the defendant raised the question of the voluntariness of those statements. Certain evidence was offered by the defendant at the suppression hearing as bearing on that matter, and during the hearing defense counsel also raised the voluntariness question. Since the trial court did not address this issue in its oral ruling, the case must be remanded for further proceedings to apply the proper standard and to make findings of fact and conclusions of law concerning the issue of whether the November 19, 1982, statements were voluntary. *See Johnson*, 671 P.2d at 962.

### III.

#### *The May 5, 1983, Statement*

The trial court found that the defendant's statement that she "could not write cursive" was involuntary under a totality of circumstances test and ordered it suppressed. We reject the People's argument that the trial court erred in making this determination.

■ The burden of proof is upon the prosecution to establish by a preponderance of the evidence that the inculpatory statement was made voluntarily. *People v. Fish*, 660 P.2d 505 (Colo.1983). The trial court is required to assess the totality of circumstances, "including the details of the interrogation and the conduct and charac-

teristics of the defendant." *Fish*, 660 P.2d at 510. *See also People v. Bookman*, 646 P.2d 924 (Colo.1982).

■ Here, the trial court focused on the following relevant factors in determining that the statement was involuntary. First, the defendant was in custody pursuant to a Crim.P. 41.1 order. Second, no *Miranda* warnings were given. *Nez v. People*, 167 Colo. 23, 445 P.2d 68 (1968). *See also Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Third, the defendant had requested, both before going to the Arapahoe County Sheriff's Office and while there, that she be allowed to consult with her attorney, who did not appear at the sheriff's office before the defendant supplied the writing samples. Fourth, Schooler threatened to jail the defendant unless she complied with the 41.1 order.[3] Such a threat is a proper factor for the court to consider in determining whether the statement was voluntary. *People v. Freeman*, 668 P.2d 1371 (Colo.1983); *People v. Quintana*, 198 Colo. 461, 601 P.2d 350 (1979). Fifth, the court found that, although the statement was not made in response to a question, Schooler's demands that the defendant provide handwriting exemplars were such that a response was compelled.

■ We are bound by the trial court's findings of fact when they are supported by adequate evidence in the record. *Fish*, 660 P.2d at 509; *People v. Scott*, 198 Colo. 371, 600 P.2d 68 (1979). Our review of the record in this case establishes that there is ample evidence to support the court's finding that the May 5 statement was involuntary.

Accordingly, the trial court's order suppressing the May 5, 1983, statement is affirmed. The order suppressing the November 19, 1982, statements is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

---

**3.** Whatever remedies might be available when the person subject to a Crim.P. 41.1 order refuses to comply with the issuing court's directive, they certainly do not include the summary jailing of the person by the officer authorized to execute the order.