The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Mary DeBACA, Defendant-Appellee.

No. 86SA383.

Supreme Court of Colorado, En Banc.

April 27, 1987.

LOHR, Justice.

The People bring this interlocutory appeal under C.A.R. 4.1 from an order of the Weld County District Court suppressing statements made by the defendant, Mary DeBaca, to a police officer while the defendant was hospitalized. The district court found that the prosecution had not established by a preponderance of the evidence that the statements had been made voluntarily, because it had presented no evidence concerning the extent of the defendant's injuries, whether she was on medication, or the effect that any such medication may have had on her ability to act voluntarily. We reverse the suppression order.

I.

We learn the facts relevant to this proceeding from unrebutted evidence presented by the prosecution at the suppression hearing. On May 3, 1986, the defendant and her friend Mary Alvarado were involved in an automobile accident as they were leaving the parking lot of the Sipres Lounge located on Weld County Road 27. The accident occurred at approximately 1:30 a.m. when the defendant drove her westbound vehicle onto Weld County Road 27 directly in front of a northbound vehicle. The two cars collided, resulting in fatal injuries to the defendant's passenger, Alvarado.

Officer Thomas Nash of the Colorado State Patrol arrived at the scene of the accident at 1:39 a.m. An ambulance was also present. After inspecting the accident scene, Nash spoke with the defendant, who at this time was sitting up in the back of the ambulance. While requesting the defendant's driver's license, registration and proof of insurance, Nash had the opportunity to observe her. He detected a strong odor of alcoholic beverage and noted that the defendant had glassy, bloodshot eyes and slurred speech. Nash testified that the defendant had no apparent injuries.

The defendant was transported by ambulance to Northern Colorado Medical Center. Officer Nash contacted a fellow officer and requested that he go to the medical center in order to draw a blood sample from the defendant so that it could be analyzed for alcohol content. Nash later asked another officer, Michael Escobar, to go to the medical center and talk to the defendant.

Escobar went to the hospital that afternoon and interviewed the defendant. He did not place her under arrest but did advise her of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After he read each right, he asked her if she understood, and she responded that she did. Escobar testified that the defendant appeared alert and had no difficulty either understanding or answering his questions. After hearing the entire advisement of rights, the defendant signed a waiver of her rights and proceeded to discuss the accident with Escobar. He asked her twenty-eight questions, writing down each question and her answer as the interview progressed. She complained of pain in her arm, but Escobar related that "she was awake, spoke well, there were no problems." Escobar testified that there was nothing about the entire exchange that indicated to him that her conversation was other than voluntary.

The defendant was later arrested and charged with vehicular homicide, a class 4 felony. *See* § 18–3–106, 8B C.R.S. (1986). The defendant filed a motion to suppress various items of evidence. After a hearing, the court granted the motion insofar as it related to the statements made by the defendant to Officer Escobar in the hospital on May 3, 1986. The People then brought this interlocutory appeal to challenge the suppression of those statements.

## II.

The trial court found that the prosecution had failed to present any evidence of the nature or extent of the defendant's injuries, whether she was being given medication, or the effect of any such medication on her ability to act voluntarily. As a result, the trial court held that the People had failed to meet their burden of proof regarding the voluntariness of her statements given in answer to Officer Escobar's questions. The court ordered that the evidence be suppressed. We conclude that the trial court erred in suppressing the defendant's statements.

## A.

It must be emphasized that this appeal does not involve the validity of an advisement of rights under *Miranda v. Arizona* or the effectiveness of a purported waiver of such rights. The advisement of rights mandated by *Miranda v. Arizona* relates only to interrogation of a person while in police custody. 384 U.S. at 478–79; *People v. Viduya,* 703 P.2d 1281, 1286 (Colo.1985); *People v. Corley,* 698 P.2d 1336, 1338 (Colo.1985); *People v. Aalbu,* 696 P.2d 796, 807 (Colo.1985); *People v. Johnson,* 671 P.2d 958, 960–61 (Colo.1983). The defendant apparently did not contend that she was in a custodial setting during her interrogation by Officer Escobar,[1] and the trial

1. The trial court's ruling was that "the people have not established by a preponderance of the evidence that the statement was made in this case voluntarily." In explaining the ruling, the court did make reference to the absence of evidence to establish the defendant's ability "to execute a voluntary waiver," thus suggesting a determination of ineffective waiver of *Miranda* rights. The argument by counsel at the conclusion of the hearing on the motion to suppress was not made part of the record, so we are not informed whether defense counsel urged the ineffective waiver of *Miranda* rights. The written motion to suppress is general and casts no

court made no findings relating to that matter.

## B.

The defendant predicated the motion to suppress her statements to Officer Escobar on the contention that those statements were not voluntary. A statement obtained from a defendant is admissible only if made voluntarily. *Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964); *People v. Thorpe,* 641 P.2d 935, 941 (1982). This requirement stems from the constitutional right to due process of law. *Colorado v. Connelly,* 479 U.S. ——, 107 S.Ct. 515, 520–21, 93 L.Ed.2d 473 (1986); *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961); *People v. Freeman,* 668 P.2d 1371, 1378 (Colo.1983); *People v. Raffaelli,* 647 P.2d 230, 234 (Colo.1982). In order to determine whether a statement is voluntary, the trial court must evaluate the totality of the circumstances surrounding the making of the statement, including the details of the interrogation and the conduct and characteristics of the defendant. *People v. Cummings,* 706 P.2d 766, 769 (Colo. 1985); *People v. Corley,* 698 P.2d 1336, 1339 (Colo.1985); *People v. Fish,* 660 P.2d 505, 508–10 (Colo.1983). When considering the totality of the circumstances, "the mental condition of the person making the statement at the time the statement is made is one of the factors relevant to the question of voluntariness[.]" *People v. Rhodes,* 729 P.2d 982, 984–85 (Colo.1985) (citing *People v. Raffaelli,* 647 P.2d 230, 235 (Colo.1982); *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978)). The United States Supreme Court has recently held, however, that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly,* 479

U.S. ——, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). *Accord People v. Rhodes,* 729 P.2d at 984–85.

■ The burden of proof is on the prosecution to establish by a preponderance of the evidence that the statements were made voluntarily. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Cummings,* 706 P.2d at 769; *People v. Corley,* 698 P.2d at 1339; *People v. Fish,* 660 P.2d at 508. The preponderance standard requires the fact finder to determine whether the existence of a contested fact is more probable than its nonexistence. *People v. Taylor,* 618 P.2d 1127, 1135 (Colo.1980); *Page v. Clark,* 197 Colo. 306, 318, 592 P.2d 792, 800 (1979).

■ At the suppression hearing, the only two witnesses were Officers Nash and Escobar, both called by the prosecution. Their testimony was uncontradicted. Officer Escobar testified that the defendant was alert and attentive in the hospital, that she spoke well and that she cooperated with the officer willingly. The only testimony concerning the defendant's physical condition at the time of the interview came from Officer Escobar. He stated that the defendant appeared to be in some pain, which he believed to be associated with complaints she made about her arm. In response to defense counsel's questions, Escobar thought he could remember seeing bandages but disavowed any knowledge concerning other injuries or the administration of medication.[2] The questions of the extent of the defendant's injuries and the possible effect of any medication did not arise again until the court commented on the absence of evidence on these matters in the course of making its findings.

In *People v. Fordyce,* 200 Colo. 153, 612 P.2d 1131 (1980), we affirmed the trial court's order of suppression relating to a

---

light on this question. In any event, both parties agree in their briefs that, as the defendant puts it, "the only issue presented in this case is whether or not the People met their burden of proving by a preponderance of the evidence that the statements made by the defendant-appellee to Officer Escobar were voluntarily made." We therefore limit our review to that issue.

2. The officer's transcription of the defendant's answers to his questions was also received in evidence. The officer's final question was whether the defendant could give a written statement, to which she replied, "No, no I don't think so my hands [sic] not so good right now."

statement by a hospitalized defendant on the basis that the extensive evidence offered by the defendant that she was suffering the effects of morphine intoxication at the time the statement was given to a police officer was sufficient to support the trial court's finding that the statement was involuntary. Here, unlike the situation in *Fordyce*, the defendant offered no evidence that any medication was administered to her or of the possible effect of any such medication or of any other medical condition that could have had a bearing on the defendant's ability to cooperate voluntarily.[3]

"A reviewing court is bound by the trial court's findings of fact on voluntariness, but the appellate court may not ignore uncontradicted credible evidence in the record." *People v. Cummings*, 706 P.2d at 769. *See also People v. Freeman*, 668 P.2d 1371, 1378 (Colo.1983). In the present case, the record contains nothing but uncontradicted evidence, presented by an officer who had ample opportunity to observe the defendant, that she was alert and cooperative and that her statements were voluntary. There was no evidence of coercive police activity. Accordingly, we conclude that the trial court's finding that the People did not carry their burden of establishing that the defendant's statements were voluntary is not supported by the record. The suppression order is reversed.

ROVIRA, J., specially concurs.

ROVIRA, Justice, specially concurring:

I agree with the result reached by the majority. I write only to express my opinion that the result in this case, that the defendant's statements were voluntary, should be governed by the principles set out in *Colorado v. Connelly*, 479 U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In *Connelly*, the Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Pro-

cess Clause of the Fourteenth Amendment." 479 U.S. at ——, 107 S.Ct. at 522.

The Court also states that "mental condition is surely relevant to an individual's susceptibility to police coercion...." 107 S.Ct. at 521. This implies that the requisite police coercion can be determined without examining the mental state of the defendant. *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.1987) (reading *Connelly* to hold that personal characteristics "would be relevant to the voluntariness issue once coercive police activity has been shown...."); *United States v. Wolf*, 813 F.2d 970, 975 n. 16 (9th Cir. March 27, 1987) (reading *Connelly* to hold that voluntariness for due process purposes "turns solely on the objective constitutional acceptability of the police conduct.").

Here, there was absolutely no evidence that the defendant's statements were induced by police misconduct; therefore, the defendant's medical condition is not relevant.

We recently reached this same conclusion in *People v. Rhodes*, 729 P.2d 982 (Colo.1986), where we reversed the suppression of a confession because the record did not indicate that the defendant's statements were induced by coercive police activity even though there was substantial evidence concerning the defendant's mental condition.

In distinguishing the case at bar from *People v. Fordyce*, 200 Colo. 153, 612 P.2d 1131 (1980), the majority suggests that if the defendant had testified concerning her medical condition the result might be different. I disagree with such a suggestion for the reason that her medical condition, evidencing an ability to cooperate voluntarily, is not relevant until police coercion has been established.

---

3. *People v. Fordyce* was decided before *Colorado v. Connelly*, 479 U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In *People v. Fordyce*, therefore, we did not address the question whether the police conduct was of the coercive nature

required by *Colorado v. Connelly* as a necessary predicate to a finding of involuntariness under the due process clause of the fourteenth amendment.